Peter A. MORTON, an individual; Hard Rock Cafe Investors, Ltd., a California limited partnership; Hard Rock Cafe Investors IV, a California limited partnership; Hard Rock Cafe Investors V, a California limited partnership; Hard Rock Cafe Investors VI, a California limited partnership; Hard Rock Cafe Investors VII, a California limited partnership; Hard Rock Cafe Investors VIII, a California limited partnership; Hard Rock Cafe Investors IX, a Nevada limited partnership; Hard Rock Cafe Investors X, a California limited partnership; Hard Rock Cafe Investors XI, a California limited partnership, Plaintiffs,

v.

RANK AMERICA, INC., a Georgia corporation; Planet Hollywood, Inc., a Florida corporation; Planet Hollywood, Inc., a Delaware corporation; Hard Rock Cafe International, Inc., a Delaware Corporation; Robert Earl; and Keith Barish, Defendants.

No. CV 92–0610 RG (Kx).

United States District Court, C.D. California.

Jan. 28, 1993.

---

Harry B. Swerdlow, Cooper, Epstein & Hurewitz, Beverly Hills, CA, James E. Hornstein, Greenberg, Glusker, Fields, Claman & Machtinger, Los Angeles, CA, for plaintiffs.

Maxwell M. Blecher, Blecher & Collins, John J. Quinn, Quinn, Kully and Murrow, Los Angeles, CA, Michael O. Warnecke, Keck, Mahin & Cate, Chicago, IL, Seth M. Hufstedler, Hufstedler, Kaus & Ettinger, Howard L. Weitzman, Katten, Muchin, Zavis & Weitzman, Los Angeles, CA, for defendants.

## MEMORANDUM DECISION & ORDER

GADBOIS, District Judge.

The Defendants' Motion to Dismiss came on for hearing before this Court on Monday, October 19, 1992, at 10:00 a.m. Having considered the moving and opposition papers and arguments of counsel, the Court rules as follows:

### I. *Background*

Plaintiff Peter Morton owns the rights to the Hard Rock Cafe trademark in the western half of the United States. Morton, along with a consortium of Hard Rock Cafe Investors, has named the following as Defendants in this suit: (1) Rank America, Inc. ("Rank")—an entity engaged in various business activities throughout the world, including the operation of various Hard Rock Cafes worldwide. Rank is the parent company of Defendant Hard Rock Cafe International, Inc. ("HRCI"), an entity that represents Rank as the owner of a fifty percent interest in the Licensing Corporation (the entity established to hold legal title to the Hard Rock trademark); (2) HRCI—a Rank subsidiary to which Isaac Tigrett, the co-founder of the Hard Rock Cafe, assigned his rights to use and exploit the Hard Rock Cafe mark in the eastern half of the United States; (3) Planet Hollywood, Inc.—a Florida and/or Delaware Corporation owned and operated by Defendants Robert Earl and Keith Barish; (4) Robert Earl—the President of HRCI and the President and CEO of Planet Hollywood, Inc.; and (5) Keith Barish—a director and executive of Planet Hollywood, Inc. This lawsuit derives from the Defendants' development and contemplated nationwide expansion of the Planet Hollywood restaurant, a competing restaurant in some respects similar to the Hard Rock Cafe.

The Plaintiffs state nine causes of action. Counts 1 and 4 allege violations of the federal and state antitrust laws. Count 2 alleges trade dress infringement in violation of the Lanham Act. Count 3 seeks redress pursuant to the California antidilution statute. Counts 5 and 6 allege breaches of fiduciary duty by Defendants Earl and Rank. Count 7 alleges a misappropriation of trade secrets. Count 8 states a claim for unfair competition. Finally, Count 9 pleads tortious interference with business relations.

The Plaintiffs assert that the overall motif of the Hard Rock Cafe restaurants—which is created through the combination of the service of American cuisine, the display of entertainment memorabilia, the loud broadcast of contemporary music, the availability of souvenir merchandise bearing the Hard Rock Cafe logo, and a multiple floor layout with vaulted and hand-painted ceilings—is distinctive and non-functional and therefore protectable trade

dress. The Plaintiffs contend that the Defendants have utilized Hard Rock trade secrets to create the Planet Hollywood restaurants, and that these restaurants, which are allegedly knock-offs of the Hard Rock restaurants, constitute an infringement of the Plaintiffs' trade dress. The Plaintiffs further allege that the Defendants have stolen trade secrets and copied trade dress in an attempt to monopolize the market for entertainment/music themed restaurants in the United States.

The Defendants have now moved to dismiss the entire complaint, pursuant to F.R.C.P. 12(b)(6).

## II. *Jurisdiction*

The Plaintiffs' Second Amended Complaint ("the Complaint") alleges causes of action arising under the following laws of the United States: Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)); Section 2 of the Sherman Act (15 U.S.C. § 2); and Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15, 26). The Complaint also alleges various causes of action arising under state law.

This court has jurisdiction over this matter, pursuant to: (a) 28 U.S.C. § 1331 (federal question jurisdiction); (b) 28 U.S.C. § 1332 (diversity jurisdiction); and (c) 28 U.S.C. § 1367 (supplemental jurisdiction).

## III. *Analysis*

### A. Standard for Dismissal Pursuant to F.R.C.P. 12(b)(6)

Dismissal of an action pursuant to F.R.C.P. 12(b)(6) ("failure to state a claim upon which relief can be granted") is strongly disfavored. The accepted rule is that the court should not dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (footnote omitted). The Court must take all allegations of the plaintiff as true, and the complaint must be construed in the light most favorable to the plaintiff. *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir.1981). This court analyzes below whether the Defendants have met the burden of proof required under F.R.C.P. 12(b)(6) for dismissing the Plaintiffs' Complaint.

### B. Counts 1 and 4—Violation of Antitrust Laws

Count 1 of the Complaint states a cause of action under Section 2 of the Sherman Act[1] alleging conspiracy and attempt to monopolize the market for Entertainment/Music Themed restaurants in the United States. Count 4 alleges a parallel state claim under the Cartwright Act.[2] As private parties, the Plaintiffs have standing to bring suit for monetary and injunctive relief under Sections 4 and 16 of the Clayton Act.[3]

### 1. Attempt to Monopolize

■ "The phrase 'attempt to monopolize' means the employment of methods, means

---

**1.** Section 2 of the Sherman Act states, in relevant part:

Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony.... 15 U.S.C. § 2.

**2.** Cal.Bus. & Prof.Code §§ 16,000 et seq. This Memorandum Decision and Order does not separately analyze the Plaintiffs' claim under California's Cartwright Act, because the California Supreme Court has held that "cases interpreting the Sherman Act are applicable to problems arising under the Cartwright Act." *Marin County Bd. of Realtors, Inc. v. Palsson*, 16 Cal.3d 920, 925, 130 Cal.Rptr. 1, 549 P.2d 833 (1976).

**3.** Section 4 of the Clayton Act provides a private cause of action for damages:

[A]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States ... and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee. 15 U.S.C. § 15.

Section 16 of the Clayton Act provides a private cause of action for injunctive relief:

Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the antitrust laws.... 15 U.S.C. § 26.

**1066**

and practices which would, if successful, accomplish monopolization, and which, though falling short, nevertheless approach so close as to create a dangerous probability of it...." *American Tobacco Co. v. United States*, 328 U.S. 781, 785, 66 S.Ct. 1125, 1127, 90 L.Ed. 1575 (1946). The Ninth Circuit has held that, to establish an attempt to monopolize claim under Section 2 of the Sherman Act, a plaintiff must prove the following:

(1) specific intent to control prices or destroy competition;

(2) predatory or anticompetitive conduct to accomplish the monopolization;

(3) dangerous probability of success; and

(4) causal antitrust injury.

*Pacific Express, Inc. v. United Airlines, Inc.*, 959 F.2d 814 (9th Cir.1992), *citing Movie 1 & 2 v. United Artists Communications, Inc.*, 909 F.2d 1245, 1254 (9th Cir. 1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2852, 115 L.Ed.2d 1020 (1991).

The Plaintiffs claim that the Defendants intend "to control prices or destroy competition" by coercing the Plaintiffs to sell their interests in the Hard Rock enterprise at far below fair market value. Second Amended Complaint at ¶¶ 29, 30. The Defendants have allegedly attempted to achieve this goal by committing the following "anticompetitive acts": (1) misappropriating Hard Rock trade secrets and Hard Rock format to develop "a low quality restaurant format entitled 'Planet Hollywood'"; and (2) threatening to open Planet Hollywood restaurants in the proximity of each of the Plaintiffs' existing Hard Rock Cafe restaurants, thereby "adversely affecting and destroying" these businesses. *Id.* at ¶ 33 (A) and (B).

The Defendants maintain that the Plaintiffs cannot state a claim for attempted monopolization, because they have not, nor can they, allege an "antitrust injury" arising from "predatory or anticompetitive conduct." The Defendants argue that the Plaintiffs are trying to characterize the introduction or threatened introduction of *competition* into a market previously dominated exclusively by Hard Rock as an "anticompetitive act." The Defendants emphasize that the opening of Planet Hollywood restaurants offers more consumer choice, increases output, and stimulates price competition. Defendants' Motion to Dismiss at 11.

**2. Anticompetitive Acts and Antitrust Injury**

To establish a claim for attempted monopolization under Section 2 of the Sherman Act, a plaintiff must demonstrate that the defendant has committed *anticompetitive acts* resulting in an *antitrust injury*. *Pacific Express*, 959 F.2d at 817. Additionally, a private party does not have standing to bring an antitrust suit unless he or she can prove the existence or threat of an antitrust injury—"an injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Atlantic Richfield Co. v. U.S.A. Petroleum*, 495 U.S. 328, 334, 110 S.Ct. 1884, 1889, 109 L.Ed.2d 333, 343 (1990) ("*ARCO*") (interpreting Section 4 of the Clayton Act—damages); *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 113, 107 S.Ct. 484, 491, 93 L.Ed.2d 427, 438 (1986) (interpreting Section 16 of the Clayton Act—injunctive relief),[4] citing *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977). An anticompetitive act is one that results in harm to "*competition*, not *competitors*." *ARCO*, 495 U.S. at 338, 110 S.Ct. at 1891; *Cargill*, 479 U.S. at 116, 107 S.Ct. at 492; *Brunswick*, 429 U.S. at 487, 97 S.Ct. at 696 (emphasis in original).

Although conduct allegedly in violation of the antitrust laws may actually enhance competition in some respects, the Supreme Court has held that the "antitrust injury requirement ensures that a plaintiff can recover only if the loss stems from a competition-*reducing* aspect or effect of the

4. With regard to injunctive relief, *Cargill* held that the plaintiff cannot allege the *threat* of an antitrust injury unless such injury arose from actions in violation of the antitrust laws. 479 U.S. at 112–113, 107 S.Ct. at 490–491.

defendant's behavior." *ARCO,* 495 U.S. at 334, 110 S.Ct. at 1889. In other words, an "antitrust injury" can only arise from anticompetitive acts, "since it is inimical to the antitrust laws to award damages for losses stemming from continued competition." *Id.,* citing *Cargill,* 479 U.S. at 109–110, 107 S.Ct. at 488–489; *see also Cal. Computer Prod. v. Int'l Business Machines,* 613 F.2d 727, 732 (9th Cir.1979) (antitrust plaintiff must establish that it has been injured by anticompetitive conduct beyond plaintiff's own loss of business or market's loss of competitor).

In response to these arguments, the Plaintiffs emphasize that they are seeking damages and injunctive relief for *conspiracy and attempt* to monopolize, rather than actual monopolization. The Plaintiffs maintain that they do not have to show "any actual antitrust injury to the marketplace" if they do not allege the creation of an actual monopoly.[5] *Multiflex, Inc. v. Samuel Moore & Co.,* 709 F.2d 980, 994 (5th Cir.1983), *cert. denied,* 465 U.S. 1100, 104 S.Ct. 1594, 80 L.Ed.2d 126 (1984). However, *Multiflex* merely stands for the proposition that a valid claim for attempted monopolization may exist in cases where such an attempt fails. The defendant in *Multiflex,* Moore, allegedly disparaged Multiflex to bankers and prospective customers, hindering Multiflex's ability to obtain loans and bid for jobs. *Id.* at 991. In spite of its attempts to drive Multiflex out of the marketplace, Moore's market share actually fell. Even though Moore failed to create a monopoly, it was still liable for any interim damages suffered by Multiflex as a result of the anticompetitive activity.

*Id.* at 995. *Multiflex* specifically states that, to support a private suit under the Sherman Act:

> there must be some indication of a particular injury caused to the plaintiff's business or property by the violation. A violation accompanied only by generalized damage to the marketplace but no particularized injury could support a request for injunction....

*Id.* at 990.

Regardless of whether the Hard Rock Plaintiffs seek damages or injunctive relief, they cannot state a claim for attempt and/or conspiracy to monopolize under Section 2 of the Sherman Act without alleging facts to support their claim that the defendants have committed *anticompetitive or predatory acts,* and that some *antitrust injury* has arisen from these acts. Anticompetitive acts are typically associated with predatory pricing, other types of price fixing, boycotting, dealer termination, and other activities that ultimately reduce competition. *See, e.g., W. Concrete Structures Co., Inc. v. Mitsui & Co., Inc.,* 760 F.2d 1013, 1017–18 (9th Cir.1985), *cert. denied,* 474 U.S. 903, 106 S.Ct. 230, 88 L.Ed.2d 229 (selling steel strand at illegally low prices in inelastic market may reduce competition)[6].

The Plaintiffs have alleged that the Defendants expropriated trade secrets, copied trade dress, and opened Planet Hollywood restaurants in the vicinity of Hard Rock restaurants. Second Amended Complaint at ¶¶ 33(A) & (B). Even if the Defendants committed all of these acts, their conduct

---

**5.** At oral argument, Plaintiffs conceded that the Hard Rock enterprise, jointly owned by Defendant Rank and Plaintiff Morton, currently occupies 80–90% of the market for Entertainment/Music Themed Restaurants. Transcript at 17.

**6.** Although the Plaintiffs do not specifically allege that the Defendants have engaged in predatory pricing, they do classify Planet Hollywood as "a low quality restaurant format." Second Amended Complaint at ¶ 33(A). However, this suggestion of price undercutting directly undermines the Plaintiffs' claims for trade dress infringement under the Lanham Act. If the Defendants have copied Hard Rock's trade dress in

developing the format for Planet Hollywood, then Planet Hollywood can be no more "low quality" than the Hard Rock itself.

Any allegation of predatory pricing would also contradict the Plaintiffs' claim for expropriation of trade secrets. Paragraph 39 of the Second Amended Complaint alleges that Defendant Earl illegally acquired Hard Rock trade secrets regarding "the amounts that have been and should be charged for food, drink, various items of merchandise, souvenirs, franchise fees and other items" and used them to develop Planet Hollywood. The Defendants cannot undercut Hard Rock's prices and simultaneously utilize Hard Rock's price lists.

still cannot be classified as anticompetitive. Planet Hollywood's entry into the relevant market increases, rather than decreases, competition.

Because the Defendants have committed no anticompetitive or predatory acts, there can be no antitrust injury. The Plaintiffs' conclusory allegations regarding a conspiracy by the Defendants to drive down the value of the Hard Rock and buy the Plaintiffs' interest in this business at below market price are insufficient. *See* Second Amended Complaint at ¶ 33. For these reasons, the Defendants' Motion to Dismiss Counts 1 and 4 of the Plaintiffs' Complaint is granted with prejudice.

### C. *Count 2*—Trade Dress Infringement in Violation of the Lanham Act

■ Count 2 of the Plaintiffs' Complaint alleges a cause of action for trade dress infringement under Section 43(a) of the Lanham Act.[7] The Plaintiffs describe the allegedly distinctive and non-functional "overall motif" of the Hard Rock Cafes in the following manner: a casual restaurant and bar featuring American cuisine, entertainment memorabilia displayed in a museum or gallery-like format, music played at a very high volume, a retail sales area offering souvenir merchandise bearing the Hard Rock logo, and a decor consisting of high vaulted ceilings that are hand-painted to have sky or night time effects, multiple floor levels, and dark wood accentuated by brass accessories. Second Amended Complaint at ¶ 44. The Plaintiffs allege that the Defendants have "adopted the trade dress of Planet Hollywood with the intent of trading on the goodwill" built up by the Hard Rock trade dress. *Id.* at ¶ 52.

■ To succeed on a claim for trade dress infringement under the Lanham Act,

the Plaintiffs must show that their trade dress is (1) non-functional, (2) "distinctive," and (3) is likely to be confused with the Defendants' products by members of the consuming public. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. ——, ——, 112 S.Ct. 2753, 2757–2758, 120 L.Ed.2d 615, 624 (1992); *see also First Brands Corp. v. Fred Meyers, Inc.*, 809 F.2d 1378, 1381 (9th Cir.1987). The Supreme Court has held that trade dress is "distinctive and capable of being protected if it *either* (1) is inherently distinctive *or* (2) has acquired distinctiveness through secondary meaning." *Two Pesos*, 505 U.S. at ——, 112 S.Ct. at 2758, 120 L.Ed.2d at 624. The plaintiff bears the burden of proving that its trade dress is nonfunctional. *Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1506 (9th Cir.1987).

The Defendants focus their argument on the first prong of the trade dress standard. They maintain that the Hard Rock motif is functional, and point to the following definition by the Ninth Circuit to support their argument:

> Functional features of a product are features 'which constitute the actual benefit that the customer wishes to purchase, as distinguished from an assurance that a particular entity made, sponsored, or endorsed a product.'

*Banana Republic*, 831 F.2d at 1506; *Vuitton et Fils S.A. v. J. Young Enters, Inc.*, 644 F.2d 769, 774 (9th Cir.1981) (quoting *Int'l Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912, 917 (9th Cir. 1980), *cert. denied*, 452 U.S. 941, 101 S.Ct. 3086, 69 L.Ed.2d 956 (1981)). Drawing on this definition, the Defendants argue that the American-style, entertainment-theme motif that constitutes the Hard Rock Cafe trade dress is the actual benefit that the

---

7. Section 43(a) of the Lanham Act provides, in relevant part:

Any person who, on or in connection with any goods or services ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin ... which

(1) is likely to cause confusion ... as to the affiliation, connection, or association of such person with another person ..., or

(2) in commercial advertising or promotions, misrepresents the nature, characteristics, qualities, or geographic origin or his or her or another person's goods ..., shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

customer wishes to purchase, and is therefore unprotectable because it is functional.

In *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837 (9th Cir.1987), the Ninth Circuit reversed a jury verdict for the defendant and remanded for trial, due to an improper jury instruction on the issue of functionality. In so doing, the Ninth Circuit stated that functionality is a *question of fact. Id.* at 843; *see also Vuitton*, 644 F.2d at 775.

The Defendants cite *Banana Republic*, 831 F.2d at 1506, for the proposition that "unique arrangements of purely functional features constitute a functional design," and therefore "as a matter of law" are not entitled to protection under the Lanham Act. However, this case does not stand for the proposition that a trade dress claim may be dismissed before allowing the plaintiff to offer proof of non-functionality.[8] *Banana Republic* affirmed the district court's entry of a directed verdict in a trade dress case *after* the plaintiff had presented evidence to the jury. Likewise, in *Two Pesos* the *jury* decided the issue of functionality. Because functionality is a question of fact, the Plaintiffs' claim under Section 43(a) of the Lanham Act cannot be dismissed on the grounds that the Hard Rock Cafe trade dress is functional.

At oral argument, the parties discussed likelihood of confusion, the third prong of the test for protectable trade dress. In paragraph 44 of the Complaint, the Plaintiffs specify the elements of the Hard Rock's "overall motif" that allegedly form its non-functional and distinctive trade dress. Paragraph 51 of the Complaint states that Planet Hollywood "features a motif and trade dress that is confusingly similar to the distinctive motif and trade dress of the Hard Rock Cafe...." This conclusory statement is insufficient; the Plaintiffs must allege specific facts illus-trating the manner in which Planet Hollywood is "confusingly similar" to the Hard Rock Cafe. To save the time of all parties involved and the resources of the litigants, this court orders a more definite statement specifying the facts underlying the Plaintiffs' claim of likelihood of confusion.

The Defendants' motion to dismiss Count 2 of the Plaintiff's Complaint is denied.

### D. *Count 3*—Violation of Antidilution Provisions of California Business and Professions Code

■ The Plaintiffs allege in Count 3 that the Defendants' confusingly similar trade dress and motif is actionable, because it dilutes the distinctive quality of the Plaintiff's trade dress[9] in violation of Cal.Bus. & Prof.Code § 14335(a).[10]

Section 14335(a) provides:

Any person who unlawfully infringes upon a *mark registered under this chapter or under Title 15 of the United States Code*, other than in an otherwise noninfringing manner, either on the person's own goods or services or to describe the person's own goods or services, irrespective of whether the mark is used primarily as an ornament, decoration, garnishment, or embellishment on or in products, merchandise, or goods, for the purpose of enhancing the commercial value of, or selling or soliciting purchases of, products, merchandise, goods, or services, without prior consent of the owner of the mark, shall be subject to an injunction against that use by the owner of the mark. (emphasis added)

The Defendants contend that the Plaintiffs may not base their antidilution claim on the Hard Rock Cafe trade dress, but must instead allege the infringing use of a *registered mark* and the Plaintiffs' owner-

---

8. At oral argument, the Defendants also cited *Prufrock Ltd., Inc. v. Lasater*, 781 F.2d 129, 132 (8th Cir.1986), for the proposition that a court may rule on functionality as a matter of law. However, *Prufrock* explicitly states that functionality is a question of fact. *Id.* The appeals court overturned the district judge's factual finding of nonfunctionality under the clearly erroneous standard.

9. The Plaintiffs admit that their complaint does not explicitly allege the dilution of a trademark.

10. The Plaintiffs' complaint cites Cal.Bus. & Prof.Code § 14330. Section 14330(b), upon which the Plaintiffs' claim is based, was reenacted as section 14335(a).

ship of that mark. The Plaintiffs argue that, because trademark and trade dress are afforded equal protection, an antidilution claim based on the infringement of their trade dress is actionable under section 14335. In support of this proposition, the Plaintiffs cite to *Grey v. Campbell Soup Co.*, 650 F.Supp. 1166 (C.D.Cal.1986), *aff'd*, 830 F.2d 197 (9th Cir.1987). Although the court in *Grey* enjoined further use of the plaintiff's trademark, it did not authorize this remedy based upon the antidilution statute, but upon the successful trade dress counterclaim under the Lanham Act. *Id.* at 1172–73.

The plain language of Section 14335 provides injunctive relief only for the infringement of a mark registered under state or federal law. Since the Plaintiffs have not alleged the infringement of a registered mark, and since case law has not extended the application of this statute to trade dress, the Defendants' motion to dismiss Count 3 is granted with prejudice.

E. *Count 5—Earl's Breach of Fiduciary Duty Against all Defendants*

1. Nature of the Count

In Count 5, the Plaintiffs allege that from 1988 to at least November 1991, Defendant Earl was an officer of the Licensing Corporation[11] and a member of its Board of Directors as well as CEO of Rank and Rank America's Hard Rock Cafes. Second Amended Complaint at ¶ 62. Plaintiff then alleges that Earl, with the assistance of the other Defendants, violated the fiduciary duty that he owes to the Plaintiffs by developing the Planet Hollywood restaurants and by planning to open them in proximity to the Plaintiffs' Hard Rock Cafes. *Id.* at ¶ 63. The Plaintiffs allege that the Defendants used the jointly owned Hard Rock trade secrets to aid in this endeavor. *Id.*

2. Analysis

■ It is axiomatic that an officer or director of a corporation owes a fiduciary duty to the corporation and its shareholders. This duty sharply limits a director or officer's business activities when those activities would compete with or otherwise injure the business of the corporation of which they are fiduciaries. *Fender v. Prescott*, 476 N.Y.S.2d 128, 101 A.D.2d 418, 423 (1984), *aff'd*, 64 N.Y.2d 1077, 489 N.Y.S.2d 880, 479 N.E.2d 225 (1985), citing *Robert N. Brown Assoc., Inc. v. Fileppo*, 327 N.Y.S.2d 133, 38 A.D.2d 515 (1971).[12] New York statutory law provides that a director or an officer may be liable for the "loss or waste of corporate assets due to any neglect of, or failure to perform, or other violation of his duties." N.Y.Bus. Corp.Law § 720.

The Plaintiffs allege that the Licensing Corporation was formed to act as "their [Morton and Tigrett's] agent in holding legal title to the Hard Rock trademark and trade name for their joint benefit and in administering, *enforcing and protecting their rights in and in connection with said [Hard Rock Cafe] Mark and name,* with the revenue therefrom to go equally

**11.** In 1985 Morton and Tigrett, the original founders of the Hard Rock Cafe, entered into a written agreement pursuant to which Morton was to have the exclusive right to operate businesses of every kind, including but not limited to Entertainment/Music Themed Restaurants, using the trademark and trade name "Hard Rock," in the Western United States, and Tigrett was to have the same rights in the Eastern half.

Under the agreement, Morton and Tigrett established the Hard Rock Cafe Licensing Corporation, which was to be controlled by them equally, and was to act as their agent in holding legal title to the Hard Rock trademark and trade name for their joint benefit and in administering, enforcing and protecting their rights in and in connection with the mark, with the revenue

to be shared equally by Morton and Tigrett. The Licensing Corporation was to be governed by a Board of Directors consisting of three members, one appointed by Morton, on appointed by Tigrett and one appointed by the court in the event the two of them could not agree on the name of the third director.

**12.** Because Licensing Corporation is a New York Corporation, New York law governs the determination of matters relating to the corporation, including fiduciary duties. *See Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1527 (9th Cir.1985) ("Claims involving 'internal affairs' of corporations, such as the breach of fiduciary duties, are subject to the laws of the state of incorporation.").

to Morton and Tigrett." Second Amended Complaint at ¶ 24. The Plaintiffs then argue that Defendant Earl, as a director of the Licensing Corporation, breached his fiduciary duty by developing and opening Planet Hollywood as a "knockoff" of the Hard Rock concept, allegedly with the use of the jointly owned Hard Rock trade secrets.

This claim cannot be dismissed on the basis that the Complaint does not allege a breach of fiduciary duty. The Licensing Corporation is responsible for the protection and enforcement of the rights in the Hard Rock Cafe Mark and trade name. Defendant Earl owes a duty of loyalty to the corporation and to the shareholders. The opening of Planet Hollywood could potentially dilute the Hard Rock Cafe mark and trade name if Planet Hollywood competes successfully with Hard Rock. As stated succinctly by the Plaintiffs:

[D]efendant Earl clearly had a duty as an officer of Licensing Corp. to work against any acts tending to decrease the value of [the Hard Rock] assets. [P]laintiffs allege that Earl, far from preventing such acts, actually promoted them. Plaintiffs' Opposition at 13.

In their Reply, the Defendants assert for the first time that even if a breach of fiduciary duty has been alleged, the Plaintiffs are not the proper parties to assert these claims. While this position may in fact be meritorious, it cannot be properly considered because it was raised for the first time in the Reply.

The Defendants also challenge the sufficiency of the Plaintiffs' conspiracy allegations plead in Count 5. The Defendants argue that the Plaintiffs' allegations fail to state with any specificity the elements of a conspiracy claim, citing *Schaefer v. Macri*, 196 F.2d 162 (9th Cir.1952), *cert. denied*, 344 U.S. 832, 73 S.Ct. 38, 97 L.Ed. 647 (1952), for the proposition that the Plaintiff must allege facts from which an inference of collusion may be drawn. *See* Defendants' Memo In Support of Motion at 12 n. 8.

The Plaintiffs admit that they must plead facts from which an inference of collusion may be drawn. They assert that the following allegations fulfill this requirement:

—"defendants have conspired together to coerce and force Morton and his associated entities to sell to RANK and Rank America their entire Hard Rock interests at a price far below their fair market value." Second Amended Complaint at ¶ 1.

—"Earl thus flagrantly violated his said fiduciary duty obligations to Morton, his licensees and successors with the knowledge, support, cooperation and assistance of RANK, Rank America and the other defendants." Second Amended Complaint at ¶ 63.

These allegations are too conclusory, because the Plaintiffs have not plead specific *facts* to support a conspiracy. Therefore, to save the time of all parties involved and the resources of the litigants, this court orders a more definite statement specifying the facts underlying the Plaintiffs' conspiracy allegations regarding Defendant Earl's fiduciary duty. The Defendants' motion to dismiss Count 5 is denied.

F. *Count 6*—Breach of Rank's and Rank America's Fiduciary Duties Against All Defendants

1. Nature of the Count

In Count 6, the Plaintiffs allege that the arrangement between Morton and Tigrett constituted a joint venture between Morton and Tigrett to organize and operate Hard Rock Cafes and other businesses using the "Hard Rock" trademark and trade name. Second Amended Complaint at ¶ 68. The Plaintiffs then allege that Rank, as Tigrett's successor, breached a fiduciary duty to Morton. *Id.* at ¶ 69. The Plaintiffs assert that all the Defendants conspired with Rank to effectuate this breach. *Id.* at 70.

2. Analysis

The Defendants contend that Morton and Rank are simply not joint venturers. The Defendants cite *Levine v. The Personnel Institute, Inc.*, 138 N.Y.S.2d 243 (1954), *aff'd*, 158 N.Y.S.2d 740, 2 A.D.2d

964 (1956), in which the court opined that a joint venture includes:

> sharing of losses ..., joinder or pooling of property, risks and skills so that for the purpose of the particular adventure their respective contributions have become as one and the commingled property and interests are thereby subject to the mutual control of all.

138 N.Y.S.2d at 248. The Defendants also highlight the following recitation by the *Levine* court:

> The fiduciary obligation arises upon the coagulation of property, profits or other interests which the parties can then be said to hold jointly and which are made accessible to each other in terms of the confidential relationship which exists between joint associates.

*Id.*, 138 N.Y.S.2d at 249. The Defendants maintain that the Plaintiffs have failed to allege any facts that would suggest that the arrangement between Morton and Tigrett constituted a joint venture, and emphasize that the Settlement Agreement entered into between Morton and Tigrett established that each would have the "exclusive" right to operate Hard Rock cafes in *separate* areas of the country.

Apparently conceding that a "joint venture" does not exist, the Plaintiffs respond that Rank, which controls a 50% interest in the Licensing Corporation, owed the Plaintiffs a fiduciary duty. The Plaintiffs cite *Fender, supra,* to support their argument. In *Fender,* the parties were equal shareholders, officers, and directors of a company engaged in purchasing and operating cold storage warehouse facilities. Disputes developed between the parties culminating in a buy-sell agreement. After the parties had entered into the buy-sell agreement, but before any sale closed, the defendant attempted to purchase a warehouse and asbestos plant. The plaintiff brought two derivative actions to prevent the acquisition, alleging that the defendant was attempting to divert corporate opportunities of the company, even though the opportunities were unrelated to the business of the company. In reversing summary judgment for the defendants, the Court discussed the fiduciary duty that exists in such a situation:

> [D]efendant, as a shareholder, officer and director of a close corporation, was subject to a standard of honesty and good faith which required that he devote his undivided and unqualified loyalty to the corporation. The fiduciary duty imposed upon him prevented him from placing his private interests in conflict with those of the corporation. We recently observed ... that the relationship between shareholders in a close corporation, vis-a-vis each other, is akin to that between partners and imposes a high degree of fidelity and good faith. As was observed by Chief Judge Cardozo ...: 'A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior.' The principle operates to prevent a fiduciary from entering into competition with or otherwise personally profiting at the expense of the corporation.

*Id.*, 476 N.Y.S.2d 128, 101 A.D.2d at 422–23 (citations omitted).

The Defendants attempt to distinguish *Fender* on the basis that the parties there, unlike here, were officers and directors as well as shareholders. This distinction would have weight if not for the fact that the Licensing Corporation is a closely held corporation. As a 50% shareholder in the Licensing Corporation, Rank owed a fiduciary duty to Morton.[13]

The Defendants again argue for the first time in their Reply that the Plaintiffs are not the proper parties to bring this fiduciary duty claim. If the Defendants wish to raise this issue, they must do so in a proper motion.

The Defendants also attack the conspiracy allegations in Count 6. These allegations suffer the same lack of specificity as

---

13. The Plaintiffs have alleged sufficient facts to establish a fiduciary relationship between Rank and Morton. This is true, even though the Complaint erroneously pleads these facts under the joint venture label.

those plead in Count 5. Therefore, to save the time of all parties involved and the resources of the litigants, this court orders a more definite statement specifying the facts underlying the Plaintiffs' conspiracy allegations regarding Defendant Rank and Rank Organization's fiduciary duty. The Defendants' motion to dismiss Count 6 is denied.

### G. *Count 7*—Misappropriation of Trade Secrets

In Count 7 of the Complaint, the Plaintiffs allege that the Defendants have misappropriated Hard Rock trade secrets in connection with their development of the Planet Hollywood restaurant. The Defendants seek to dismiss this count on the following grounds: (1) the alleged trade secrets are generally known to the public or others in the industry; (2) the Plaintiffs do not allege that reasonable efforts were taken to maintain the secrecy of these alleged trade secrets; and (3) Defendant Robert Earl, as a co-owner of any alleged trade secrets, may appropriate any trade secrets that are rightfully his.

California's Uniform Trade Secrets Act defines a trade secret as:

information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

(1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and

(2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal.Civ.Code § 3426.1(d).

The Plaintiffs allege that the following information constitutes the trade secrets that Defendant Earl learned of and appropriated while serving as a Director of the Hard Rock Licensing Corporation (the corporation set up to enforce the rights to the mark):

[t]he actual or probable income, expenses and capital needs of HARD ROCK CAFES, the financial, operational, marketing and other business strategies and methods that have proved successful in operating said businesses and should be adopted in operating similar such businesses and those that proved unsuccessful and should be avoided, the nature and characteristics of the locations, buildings, decor, fixtures, personnel, music, food, merchandise and souvenirs that have proved successful in operating such businesses and should be adopted in operating similar such businesses and those that have proved unsuccessful and should be avoided, the suppliers who proved reliable and effective and those who have not, the effective and ineffective methods of advertising and promoting such businesses, the amounts that have been and should be charged for food, drink, various items of merchandise, souvenirs, franchise fees and other items or paid for food, drink, merchandise, souvenirs, labor, rent, advertising, promotion and other items, in order successfully and profitably to operate, franchise, license on joint venture restaurants similar to and competitive with HARD ROCK CAFE restaurants and the identities of potential financing sources, franchisees, licensees and partners for such businesses.

Second Amended Complaint at ¶ 39.

Focusing only on that information that might be generally observable by members of the general public that visited a Hard Rock Cafe (i.e., buildings, decor, fixtures, menu prices etc.), the Defendants argue that the Plaintiffs have failed to allege *anything* that would constitute a protectable trade secret. However, the Plaintiffs have cited to facts that could be inaccessible to the general public. For example, the Plaintiffs may have expended substantial time and expense in developing its supplier lists. *See Courtesy Temporary Serv. v. Camacho*, 222 Cal.App.3d 1278, 272 Cal. Rptr. 352, 358 (1990). Certain "negative" research may also result in the creation of protectable information. *See id.*, 272 Cal. Rptr. at 357. In sum, this court cannot now state that the Plaintiffs cannot prove any set of facts that would establish the existence of "information ... that derives

independent economic value ... from not being generally known to the public...." Cal.Civ.Code § 3426.1(d)(1). The Defendants' motion, therefore, cannot succeed on this basis.

The Defendants also maintain that, regardless of whether the information allegedly acquired by Defendant Earl constitutes "trade secrets," the Plaintiffs' claim still fails, because it does not allege "misappropriation." The Uniform Trade Secrets Act defines "misappropriation" as the "use of a trade secret of *another.*" Cal. Civ.Code § 3426.1(b) (emphasis added).

The Defendants note that in paragraphs 38 and 39 of the Second Amended Complaint, the Plaintiffs allege that Plaintiff Morton (the owner of the rights to the Hard Rock mark in the Western half of the United States) and Rank (the corresponding owner in the Eastern half) jointly developed and own the alleged trade secrets. The Defendants then emphasize that Defendant Earl allegedly "learned" of the trade secrets while he was a director of the Hard Rock Licensing Corporation. Second Amended Complaint at ¶¶ 39, 40. Since the Complaint also alleges that Defendant Earl is the CEO of the Rank Hard Rock Cafes, Second Amended Complaint at ¶ 1, the Defendants complete their logic by arguing that Defendant Earl could not have appropriated the trade secrets "of another" because he, as CEO of the Rank Hard Rock Cafes, is the joint owner of any alleged trade secrets.[14]

The Plaintiffs refer the court to the Settlement Agreement that was executed between Morton and Tigrett (the original owners of the mark), and which allocated to Morton the rights to the mark in the Western half of the United States and to Tigrett the identical rights in the Eastern half. Section 2.8 of the Agreement provides that neither party may "engage in any use or exploitation of the HARD ROCK CAFE MARKS which would effectively preclude or limit [the other] ... from engaging in the same or any other use or exploitation of the HARD ROCK CAFE MARKS in such other party's Domestic or Foreign Territories." The Plaintiffs contend that the "HARD ROCK CAFE MARKS" encompass the alleged trade secrets at issue here, and that the Defendants' alleged use of the trade secrets violates section 2.8 and constitutes a misappropriation under state law.

The Agreement between Morton and Tigrett specifically delineates the rights of each party in the Hard Rock Cafe Marks. Since these "Marks" likely encompass any trade secrets, it is reasonable to conclude that one party's use of the trade secrets that affects the other party's rights in the mark would constitute the misappropriation of the trade secrets "of another."

The Defendants have also failed to cite any authority indicating that the misappropriation of a trade secret by a joint owner of that trade secret does not constitute the misappropriation of the trade secret "of another." Indeed, a provision in the Civil Code cited by neither party appears to contemplate exactly this situation. Cal.Civ. Code § 3426.1(b) defines misappropriation as, *inter alia,* the

> ... use of a trade secret of another without express or implied consent by a person who:
> (B) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was:
>
> \* \* \* \* \* \*
>
> (ii) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use....

Given the circumstances of this case, it is possible that the Plaintiffs could prove a set of facts establishing that the Defendants misappropriated the Plaintiffs' trade secrets by using them when the Defen-

---

**14.** In their Reply, the Defendants undercut their argument by contending that the Morton and Rank interests are *completely separate as a result* of the Settlement Agreement that was executed by Morton and Tigrett, the original owners of the Hark Rock Cafe trademark. Indeed, their Reply states that "Morton's argument that the operational secrets were 'jointly owned' is contradicted by the agreement itself." Defendants' Reply at 22. In arguing against the joint ownership concept, however, the Defendants strengthen the Plaintiffs' assertion that the Defendants misappropriated the trade secrets "of another."

dants knew or should have known that they were acquired under circumstances giving rise to a duty to maintain their secrecy or limit their use. Thus, the Defendants' arguments on this point are ineffectual and do not provide a basis upon which to dismiss this Count.

 Finally, the Defendants assert that the Plaintiffs are required, but have failed, to allege that they made any efforts to maintain the secrecy of the information allegedly constituting trade secrets. The Plaintiffs have failed to respond to this argument, apparently believing that they may conclusorily allege that protectable trade secrets are involved. A trade secret may only exist, however, if reasonable steps were taken to maintain its secrecy. Cal.Civ.Code § 3426.1(d)(2). Without allegations to this effect, the Plaintiffs have failed to allege the existence of protectable trade secrets. To save the time of all parties involved and the resources of the litigants, this court orders a more definite statement specifying the facts underlying the Plaintiffs' claim for misappropriation of trade secrets.

The Defendants' motion to dismiss Count 7 is denied.

H. *Count 8*—Unfair Competition Pursuant To California Business and Professions Code § 17200

The Defendants assert that the Plaintiffs' unfair competition claim is wholly derivative of their prior three claims, and because they fail, so must this claim. Because this court has denied the Defendants' motion to dismiss the Lanham Act claim and the trade secret claim, the motion to dismiss the unfair competition claim is denied as well.

I. *Count 9*—Tortious Interference With Business Relations

 In Count 9 of the Complaint, the Plaintiffs allege that the Defendants "intentionally and wrongfully interfered with plaintiffs' present Hard Rock Cafe operations and with plaintiffs' expansion program for the creation and operation of additional Hard Rock Cafes." Second Amended Complaint at ¶ 84. The Plaintiffs assert that this conduct constitutes tortious interference with prospective economic advantage.

In *Pacific Gas & Elec. v. Bear Stearns & Co.*, 50 Cal.3d 1118, 1127, 270 Cal.Rptr. 1, 4 n. 2, 791 P.2d 587, 590 n. 2 (1990), the California Supreme Court identifies the elements of the tort of interference with prospective economic advantage:

(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff;

(2) the defendant's knowledge of the relationship;

(3) intentional acts on the part of the defendant designed to disrupt the relationship;

(4) actual disruption of the relationship; and

(5) economic harm to the plaintiff proximately caused by the acts of the defendant. (citing *Youst v. Longo*, 43 Cal.3d 64, 71 n. 6, 233 Cal.Rptr. 294 [729 P.2d 728] (1987)).

The Defendants maintain that the Plaintiffs have not stated a claim for tortious interference, because the Plaintiffs have failed to allege that the Defendants interfered with a "an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff." *Id.*

The tort of interference with prospective economic advantage does not exist unless the "prospective economic advantage" takes the form of a legal relationship between the plaintiff and a third party. The Plaintiffs in this case have not alleged this element of the tort, therefore Count 9 is dismissed, without prejudice. The Plaintiffs have twenty days in which to amend their Complaint.

IT IS SO ORDERED.